UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAMIKA S. SHANK,<br><br>    **Plaintiff,**<br><br>        v.<br><br>ANDREW SAUL,<br>**Commissioner of Social Security,**<br><br>    **Defendant.** | Civil Action No. 19-2400 (JEB) |

## MEMORANDUM OPINION

Plaintiff Tamika Shank, a 43-year-old woman who has had a learning disability since childhood, received over $38,000 in excess Social Security Disability Insurance benefits from 2003 to 2006, which the Social Security Administration has sought to recover. In a prior agency action, the Commissioner of Social Security determined that Shank was "not without fault" in receiving the SSDI overpayments and therefore must refund the sum. Shank then filed this suit under 42 U.S.C. § 405(g), seeking to reverse that decision. Defendant, in turn, moved to remand the case to the agency for additional proceedings to address various "unresolved questions" relating to Plaintiff's fault and other criteria for waiver. The Court now reverses the Commissioner's original finding that Shank was at fault for the overpayment, but will remand the case for certain other required findings. It will thus grant in part and deny in part both Plaintiff's Motion for Judgment of Reversal and Defendant's Motion for Entry of Judgment with Remand.

1

**I.      Background**

Although the parties' back-and-forth, multi-year efforts to resolve this issue are convoluted, the basic facts are relatively straightforward.  As a child, Plaintiff began receiving Supplemental Security Income (SSI) benefits, which are available for eligible persons of any age with a disability.  See ECF No. 6 (Administrative Record) at 17, 273; Soc. Sec. Admin., Benefits for Children with Disabilities at 1 (2021), https://www.ssa.gov/pubs/EN-05-10026.pdf; see also AR at 431.  These payments were sent to Shank's mother and then to her grandmother, each acting in the capacity of her representative payee.  See AR at 240, 442–43, 448.  Once she became an adult, Plaintiff also obtained Social Security Disability Insurance (SSDI) benefits, which are available to certain adults who have a disability that began before they reached age 22.  See AR at 12, 38; Soc. Sec. Admin., Benefits for Children with Disabilities at 7.  Her grandmother as representative payee received these SSDI benefits and related correspondence on her behalf from 1999 until 2007, even though Shank never lived with her grandmother.  See AR at 38, 209, 240, 431, 448–49; ECF No. 10 (Pl. Mem.) at 7.

Although they are similar safety-net programs for the disabled, SSI and SSDI are two distinct programs, with distinct staff members, within the Administration; while a person may qualify for both SSI and SSDI benefits, there are "many differences in the rules affecting eligibility and benefit payments."  Soc. Sec. Admin., Red Book: A Summary Guide to Employment Supports for Persons with Disabilities under the Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) Programs at 7, https://www.ssa.gov/pubs/EN-64-030.pdf (last visited Jan. 13, 2021).  As the particulars of those differences are not relevant here, the Court will not linger.

Shank worked with Goodwill of Greater Washington's Contract Services from around 1998 to 2007. See Pl. Mem. at 7; AR at 157, 406, 431–33. Although the exact nature of her work there is not clear from the record, she became eligible for what is called a "trial work period (TWP)" in January 2002. See AR at 12, 213. During this time, she could continue to receive SSDI benefits even if she worked above the substantial-gainful-activity (SGA) earnings limit for eligibility. Id. at 12. Upon completion of the TWP, Shank began a 36-month extended period of eligibility in October 2002, during which she could continue to receive SSDI benefits but only in the months in which her earnings did not exceed the monthly SGA limit. Id. at 12, 213–14. From January 2003 to November 2006, although Plaintiff's earnings did exceed that monthly threshold, see id. at 12, 157, 173, her grandmother continued to receive full benefits on her behalf. Id. at 216–18, 240. This resulted in an overpayment of $38,805.90. Id. at 209, 244.

Throughout this period, Plaintiff was reporting her work activity to the Social Security Administration in some regard, although the "exact details" are "unknown." Id. at 193. According to an SSA claims employee, her wages were reported to SSI but, importantly, not "transfer[red] to SSDI" and used to adjust her SSDI benefits. Id. at 224 (emphasis added). The SSA sent an initial notice assessing an overpayment to Shank's grandmother on December 9, 2006, id. at 240–42, and made numerous attempts to contact Shank from February 2007 through January 2015 seeking a recovery. Id. at 209–10. On May 8, 2015, the SSA notified Shank that it would begin to collect the overpayment by garnishing a portion of her federal wages through a process called "Federal Salary Offset." Id. at 326–29.

Plaintiff first formally sought reconsideration of the overpayment determinations on June 5, 2015, id. at 348–53, which was denied on May 8, 2016. Id. at 66–68. She then filed a request for waiver of the recovery on June 3, 2016, id. at 69–99, which was denied five days later. Id. at

100–04.  After further communications between the parties, on August 20, 2017, the SSA sent notice confirming that her requests for reconsideration and waiver had been denied.  Id. at 331–33.  Shank then filed a written request for a hearing on October 24, 2017, id. at 109, and appeared to testify before an administrative law judge on December 20, 2018.  Id. at 424–51. The ALJ issued his decision on January 29, 2019, declining to waive recovery of the overpayment and finding Plaintiff liable for the full repayment amount of $38,805.90.  Id. at 10–15.  The ALJ concluded that Shank was "at fault" in causing the overpayment because "she was on notice that the benefits she was receiving were in question due to her ongoing work activity," but "continued to accept payment of benefits that she either knew or could have been expected to know was incorrect."  Id. at 13–14.  Furthermore, "even if [Plaintiff] was not at fault in causing the overpayment," the ALJ concluded, "she does not meet the criteria for waiver."  Id. at 14.

Shank appealed the ALJ's decision to the Administration's Appeals Council, which denied her request for review on June 7, 2019.  Id. at 1D–4.  At this point, the ALJ's decision became the decision of the Commissioner and thus final for purposes of seeking judicial review. Id. at 1D, 3 (citing 42 U.S.C. § 405(g)).  Having thus exhausted her administrative remedies, Plaintiff timely filed this suit to challenge that decision, see ECF No. 1 (Complaint), and moved for Judgment of Reversal on February 12, 2020.  See ECF No. 9 (Pl. Mot.).  Acknowledging certain errors in the ALJ's reasoning, the Commissioner also moved to reverse the final decision but asked that the matter be remanded to the agency to allow for further administrative proceedings.  See ECF No. 13 (Def. Mot.) at 1–2; see also ECF No. 17 (Def. Reply) at 4.  Shank challenges any remand and seeks outright reversal.  See ECF No. 15 (Pl. Reply) at 1, 8–10.

**II.     Legal Standard**

The Social Security Act gives federal district courts the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "Remand is appropriate . . . if the record is incomplete, or if the ALJ's reasoning is not fully articulated." Warfield v. Colvin, 134 F. Supp. 3d 11, 16 (D.D.C. 2015) (citing Ademakinwa v. Astrue, 696 F. Supp. 2d 107, 111 (D.D.C. 2010)). "However, where the record in the case has been thoroughly developed, and a rehearing would merely function to delay[,] . . . reversal is appropriate." Martin v. Apfel, 118 F. Supp. 2d 9, 18 (D.D.C. 2000).

A reviewing court must affirm the Commissioner's decision if it is based on substantial evidence in the record and the correct application of the relevant legal standards. See 42 U.S.C. § 405(g); Butler v. Barnhart, 353 F.3d 992, 999 (D.C. Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brown v. Bowen, 794 F.2d 703, 705 (D.C. Cir. 1986) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The test "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." Butler, 353 F.3d at 999 (quoting Fla. Mun. Power Agency v. FERC, 315 F.3d 362, 365–66 (D.C. Cir. 2003)). "The plaintiff bears the burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied." Feenster v. Colvin, 220 F. Supp. 3d 123, 128 (D.D.C. 2016) (alteration in original) (internal quotation marks and citations omitted).

Determining whether the Commissioner's decision is supported by substantial evidence requires a court to "carefully scrutinize the entire record." Butler, 353 F.3d at 999. The inquiry therefore focuses on whether the ALJ "has analyzed all evidence and has sufficiently explained

5

the weight he has given to obviously probative exhibits." Crawford v. Barnhart, 556 F. Supp. 2d 49, 52 (D.D.C. 2008) (quoting Butler, 353 F.3d at 999). In doing so, however, a court must not "decide the facts anew, reweigh the evidence, or substitute its judgment for that of the [Commissioner]." Villate v. Sullivan, 862 F. Supp. 514, 517 (D.D.C. 1994) (quoting Fulwood v. Heckler, 594 F. Supp. 540, 548 (D.D.C. 1984)).

### III.    Analysis

Under the Social Security Act, the agency cannot seek recovery of a benefits overpayment if (1) the claimant is "without fault" in receiving the payment and (2) recovery would "defeat the purpose of [Title II] or would be against equity and good conscience." 42 U.S.C. § 404(b)(1). An individual is "at fault" when the overpayment was caused by (1) "[a]n incorrect statement made by the individual which he knew or should have known to be incorrect," (2) "[f]ailure to furnish information which he knew or should have known to be material," or (3) "acceptance of a payment which he either knew or could have been expected to know was incorrect." 20 C.F.R. § 404.507(a)–(c). In evaluating a claimant's fault, an agency must consider "all pertinent circumstances, including the individual's age and intelligence," as well as "any physical, mental, educational, or linguistic limitations." 20 C.F.R. § 404.507. While a claimant is at fault if she "fail[s] to exercise a high degree of care" in determining and reporting any circumstances "which may cause deductions from [her] benefits," 20 C.F.R. § 404.511(a), that degree of care varies with "the complexity of the circumstances giving rise to the overpayment and the capacity of the particular payee to realize that [she] is being overpaid." Id. An agency must therefore account for "variances in the personal circumstances and situations" of each claimant to determine whether she exercised the "necessary degree of care." Id.

Plaintiff here does not challenge the occurrence or the amount of the overpayment. Instead, she contends that the ALJ's decision to deny waiver of the recovery must be reversed because it is not supported by substantial evidence. Specifically, Shank argues that the ALJ erred in finding that she was "not without fault," based on his conclusion that she "knew or should have known" of the overpayments. See Pl. Mem. at 10–11. Proper consideration of all her circumstances, she asserts, compels finding both that she was "without fault" and that requiring repayment would be "against equity and good conscience" — in other words, that she is entitled to a waiver of the overpayment recovery. Id. at 11. The Court first analyzes the question of fault and then addresses the equitable issue.

    A.  <u>The ALJ's Finding of Fault</u>

The ALJ determined that Plaintiff was "at fault" in causing the overpayment because "she continued to accept payment of benefits that she either knew or could have been expected to know was incorrect." AR at 14; see also 20 C.F.R. § 404.507(c). The Court is not convinced for various reasons.

First, the ALJ did not sufficiently consider Plaintiff's "pertinent" "personal circumstances." See 20 C.F.R. §§ 404.507, 404.511. He acknowledged that Shank has a learning disability but was "not persuaded" that it "prevented her from learning of the existence of the overpayment and understanding the notices that followed." AR at 13. Instead, he concluded that Plaintiff "function[s] with a reasonable degree of independence and appropriateness" to understand and be on notice of the overpayment. Id. at 14. In support, he pointed to evidence that Plaintiff availed herself of counsel in 2015 upon learning about a federal salary offset; lives alone with minor children; manages her own finances; has worked on a continuous basis since January 2003; and has served as a representative payee for her own son.

Id.  These facts, however, merely demonstrate her functioning level in the recent past.  They shed no light on her knowledge and ability to understand SSA and SSDI obligations from 2003 to 2006, at the time the overpayments occurred, when she was a young adult who herself was assigned a representative payee to receive benefits on her behalf.  See Program Operations Manual System (POMS) GN 00502.001 (Capability Determination and Representative Payee Payment Overview), https://secure.ssa.gov/apps10/poms.nsf/lnx/0200502001 (representative payee must be appointed when beneficiary "is incapable of managing or directing someone else to manage their benefits").

More significantly, the ALJ also did not account for Plaintiff's ample evidence of circumstances suggesting a lack of knowledge, including her enrollment in special education and failure to complete high school; her initial receipt of benefits due to a learning disability; her assignment of a representative payee, who continued to accept her payments even after she reached the age of majority; the sending of initial notices of overpayment to her grandmother as payee with whom she did not live; and her receipt of benefits while working prior to the overpayments.  See Pl. Memo at 2–3, 19.  In addition, as discussed in greater detail below, she was actually reporting her wages to the SSA at the time the overpayments occurred.  See AR at 224.  The ALJ, accordingly, failed to "analyze[] all evidence" and "sufficiently explain[] the weight . . . given to obviously probative" facts.  See Crawford, 556 F. Supp. 2d at 52 (quoting Butler, 353 F.3d at 999).

The Commissioner rejoins that Shank nonetheless cannot overcome the fact "that she reported work activity to SSI rather than SSDI."  AR at 13 (citing AR at 224).  This fact, the ALJ reasoned, undermined her assertion that "she was not aware of her [SSDI] obligation to report a

8

change in employment" and instead "suggest[ed] that she was on notice that the benefits she was receiving were in question due to her ongoing work activity." Id.

As Shank reasonably argues, however, this circumstance falls far short of demonstrating that she was accepting payments that she knew or should have known were incorrect. Defendant's position must be that Plaintiff's reporting to SSI reflected her knowledge of the need to report her work activity to SSA as a whole, which indicates that she knew or should have known that she must also report to SSDI. Yet the ALJ did not identify any evidence of Shank's knowledge that she had to report her wages specifically to SSDI staff, such that reporting to some other entity or program within the broader SSA did not fulfill her obligations. Indeed, the evidence seems to point the other way. By reporting her wages to SSA — even if via SSI, not SSDI — she likely believed that she was fulfilling her requirements. As a result, Plaintiff's reporting of work activity to the SSA does not indicate that she knew or could be expected to know that she was receiving excess benefits and therefore cannot support a finding of fault.

The Government counters that the timing of her reporting — from 2003 to 2006, during which period Shank was receiving the overpayments — indicates that she knew that her wages were exceeding the SGA limit and thus had reason to think that her SSDI benefits were in question. See Def. Reply at 7. But the evidence broadly suggests that she had been reporting her work activity to SSA since before she became ineligible for her SSDI benefits. See AR at 224. Shank had presumably been reporting her earnings for purposes of her SSI benefits since 1998, when she first began working as a contractor at Goodwill. Indeed, she rightfully received her SSDI benefits while reporting wages to SSA from December 1999, when she became eligible for SSDI, to January 2003, by which time she was ineligible because she exceeded the SGA limit. See Pl. Mem. at 2, 13; AR at 12. Viewed in this context, Shank's reporting during the period of

9

overpayments suggests a continuation of her previous reporting to SSA and sheds little, if any, light on her awareness that her SSDI benefits were incorrect.

Again, the ALJ did not explain or point to any evidence indicating that Plaintiff at the time was aware of an SSDI-specific obligation to report her increased wages (to the extent that she had one). Nor does his decision indicate that she knew what the relevant SGA thresholds for eligibility were and thus should have known that, given her increased earnings, the continued SSDI benefits were likely incorrect, even though she was already reporting her wages to SSA. Cf. Feenster, 220 F. Supp. 3d at 128 (finding substantial evidence of claimant's fault based, in part, on testimony that he knew about and received notice of salary caps for benefits eligibility); Stone v. Berryhill, No. 17-1952, 2019 WL 1440130, at *1 (D.D.C. Apr. 1, 2019) (finding substantial evidence of claimant's fault because she acknowledged that "she knew of the income limits when she applied for the benefits, that she exceeded those limits when she returned to work, and that she suspected something was amiss," but nevertheless continued to accept payments). Without evidence either that Plaintiff knew of an obligation to report specifically to SSDI, or that she was aware of the relevant SGA income threshold — and thus should have known that her increased work activity made her ineligible for SSDI benefits, notwithstanding her reporting to SSA and the continued payments — her mere reporting to SSI does not suggest that she was on notice of the overpayments.

The Commissioner, for his part, acknowledges certain "errors" in the ALJ's decision identified by Plaintiff, see Def. Reply at 4 — including his consideration (or lack thereof) of Plaintiff's grandmother's receipt of her benefits, her learning disability, the fact that she did not live with her grandmother, and the fact that her wages were being reported, id. at 8 — but asks the Court to remand the case for further administrative proceedings, including a new hearing,

further development of the record if necessary, and a new decision. Id. at 5–6. Remand on the issue of Plaintiff's fault, however, is not warranted. "[W]here the record in the case has been thoroughly developed, and a rehearing would merely function to delay[,] . . . reversal is appropriate." Martin, 118 F. Supp. 2d at 18; see also Villate, 862 F. Supp. at 518–19 (reversing agency's finding of fault for overpayment and finding it "unnecessary to remand"). As the ALJ observed at the original hearing, "[T]here's a significant amount of evidence that's in the file." AR at 427–28 (noting Plaintiff's "excessive brief" and thirty-plus exhibits). The factual issues relating to Plaintiff's fault that Defendant identifies for "further consider[ation]," Def. Reply at 8, moreover, are hardly "unresolved questions" that warrant re-evaluation or additional investigation, but instead are thoroughly discussed in the administrative record.

The Court thus concludes that the Commissioner's finding of Plaintiff's fault is not supported by substantial evidence. It therefore reverses the decision of the Commissioner and finds she was "without fault" in receiving the overpayments. See Villate, 862 F. Supp. at 518 (reversing finding of fault because evidence was "insufficient for a reasonable mind to conclude that the Plaintiff was 'not without fault'" for the overpayment).

    B.  Nature of Remand

Although the Court finds that Plaintiff is without fault, that does not resolve the matter. Instead, limited remand to the agency is appropriate for further administrative proceedings on two issues.

First, as Defendant acknowledges, the ALJ's decision did not adequately consider (or, at a minimum, did not articulate his reasoning on) the second part of the waiver analysis. If a claimant is "without fault," waiver of overpayment is required if recovery would either "defeat the purpose of [Title II of the Act]" or "be against equity and good conscience." 42 U.S.C. §

404(b)(1); see also 20 C.F.R. § 404.508 (defining "[d]efeat the purpose of [T]itle II"); id. § 404.509 (defining "against equity and good conscience").  Cutting short the inquiry after concluding that Plaintiff was not "without fault" at the first step, the ALJ addressed the second step in only one sentence.  See AR at 14 ("In the alternative, [Plaintiff] does not meet the criteria for waiver even if she was not at fault in causing the overpayment.").  Because, as the Appeals Council observed, "There was no formal finding or analysis" on the equitable reasons for denying waiver, see AR at 1D, the Court cannot "assess the validity" of the ALJ's conclusion or provide any "meaningful judicial review."  Lane-Rauth v. Barnhart, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (citations and internal quotation marks omitted).  Remand is thus appropriate for the agency to consider and determine whether Plaintiff, now without fault, satisfied either of the bases under Section 404(b)(1) to justify waiver.  Warfield, 134 F. Supp. 3d at 16 ("Remand is appropriate . . . if the ALJ's reasoning is not fully articulated."); see Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) (remand to agency for additional explanation is proper when court "cannot evaluate the challenged agency action on the basis of the record before it").

  Second, although Plaintiff does not raise the issue, the Commissioner points out that the ALJ failed to make a separate determination regarding the liability and fault of her grandmother as her representative payee.  See Def. Reply at 5–6.  Under Social Security Ruling 64-7, a representative payee who receives an overpayment on behalf of a beneficiary may, under certain circumstances, be jointly and separately liable for the overpayment.  Id. at 8; see also McLees v. Saul, No. 19-489, 2020 WL 1512775, at *3–4 (E.D. Mo. Mar. 30, 2020) (finding substantial evidence to support ALJ's decision that representative payee was at fault but claimant was without fault).  On remand, therefore, the agency should conduct further proceedings, including

additional development of the record as necessary, to determine whether Shank's grandmother is liable for accepting the overpayment on her behalf.

## IV.     Conclusion

For the reasons stated above, Plaintiff's Motion for Judgment of Reversal will be granted in part and denied in part, and Defendant's Motion for Entry of Judgment with Remand will be granted in part and denied in part. A separate Order so stating will issue this day.


/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge


Date: January 15, 2021